UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

July 16, 2020

LETTER TO COUNSEL

    RE:    *Tamara D. v. Saul*
             Civil No. DLB-19-2543

Dear Counsel:

On September 4, 2019, Plaintiff Tamara D. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. ECF No. 1. I have considered the parties' cross-motions for summary judgment. ECF No. 11 ("Pl.'s Mot."), ECF No. 12 ("Def.'s Mot."). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405. This letter explains my rationale.

Plaintiff protectively filed her claims for benefits on October 30, 2015, alleging an onset date of April 22, 2013. Administrative Transcript ("Tr.") 222, 226. Her claims were denied initially and on reconsideration. Tr. 82-83, 112-13. A hearing was held on September 26, 2018, before an Administrative Law Judge ("ALJ"). Tr. 29-55. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 12-23. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "myalgia, major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder (PTSD)." Tr. 15. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can perform simple, unskilled tasks with no fast pace or strict production requirements; there can be occasional changes in the work setting; there can be

> occasional decision-making; and she can have occasional interaction with coworkers and the public.

Tr. 17. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform her past relevant work as a client service agent, but that she could perform other jobs existing in significant numbers in the national economy. Tr. 21-22. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 23.

Plaintiff makes two primary arguments on appeal: (1) that the ALJ erred at step two by not finding additional severe impairments; and (2) that the ALJ's consideration of the medical opinions was erroneous. Pl.'s Mot. 8-12. Plaintiff is essentially arguing that the medical and opinion evidence weighs in favor of a finding of disability, but the function of this Court is not to review Plaintiff's claims *de novo* or to reweigh the evidence of record. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citing 42 U.S.C. § 405(g); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *See* 42 U.S.C. § 405(g); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Under that standard, neither of Plaintiff's arguments has merit.

<u>The ALJ's step-two findings were supported by substantial evidence.</u>

Plaintiff first challenges the ALJ's step-two analysis. Pl.'s Mot. 8-10. At step two, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment that meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921 (explaining that the SSA "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment"). An impairment is considered "severe" if it significantly limits the claimant's ability to perform "basic work activities." 20 C.F.R. §§ 404.1522, 416.922. The claimant bears the burden of proving that her impairment is severe. *See Johnson v. Astrue*, Civil No. PWG–10–3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)).

Plaintiff argues that the ALJ should have found three additional severe impairments: a SLAP[1] tear of the left shoulder, chronic fatigue syndrome ("CFS"), and diabetes. Pl.'s Mot. 8. For support, she cites to treatment records, *id*. (citing Tr. 349, 353, 360-361, 366-367, 415, 432, 439, 453, 483, 518, 781, 972, 1064), her hearing testimony, *id*. (citing Tr. 40-42), and Dr. Karnes-Amzibel's Chronic Fatigue Syndrome Medical Source Statement, *id*. (citing Tr. 1134-38). All of the evidence cited by Plaintiff was discussed by the ALJ. *See* Tr. 15-21. The Court's role is not to reweigh the evidence, which is basically what Plaintiff is requesting.

---

[1] Although Plaintiff does not define "SLAP" tear and the cited records use the term "SLAP," Tr. 518, 696, the Court will take judicial notice of the fact that SLAP stands for "superior labrum anterior and posterior."

*Tamara D. v. Saul*
Civil No. DLB-19-2543
July 16, 2020
Page 3

At step two, the ALJ specifically noted that Dr. Karnes-Amzibel "indicate[d] [Plaintiff] has chronic fatigue syndrome." Tr. 15-16. However, the ALJ determined that it was not a medically determinable impairment under Social Security Rule ("SSR") 14-1p (explaining that CFS must be "accompanied by appropriate medical signs or laboratory findings" to be considered a medically determinable impairment). Tr. 16. Plaintiff does not challenge the ALJ's SSR 14-1p analysis. Despite finding that Plaintiff's CFS was not a medically determinable impairment, the ALJ considered Plaintiff's "alleged symptoms of pain, fatigue, and cognitive impairment in determining the RFC." Tr. 16; *see* Tr. 18-21. The treatment records that Plaintiff cites do not compel a different conclusion as many of them were considered and cited by the ALJ. *Compare* Pl.'s Mot. 8, *with* Tr. 15-16, 18-19.

The ALJ's step-two discussion did not mention Plaintiff's SLAP tear of her left shoulder or diabetes. However, Plaintiff has not shown that the omissions were erroneous. Plaintiff cites to only one treatment record noting her shoulder injury: a record from September 2012, three years before her alleged onset date of November 2015. *See* Tr. 518; *see also* 696 (September 2012 MRI results noting SLAP tear). This single record from 2012 is insufficient to establish a finding of severe impairment during the relevant time period. In the RFC discussion, the ALJ noted Plaintiff's allegation of shoulder pain and found that it was inconsistent with the record. Tr. 18-19. Regarding her diabetes, many of the records Plaintiff cites explicitly note that she has no history of diabetes, *see, e.g.*, Tr. 349, 353, 434, 455, or "No diabetes mellitus – but + hyperglycemia," Tr. 362, 417. In February 2017, Dr. Karnes-Amzibel noted that Plaintiff had been newly diagnosed with diabetes, Tr. 972, 1064; *see also* Tr. 781 (podiatrist treatment notes referencing diabetes), but Plaintiff did not name diabetes among her alleged impairments, *see* Tr. 248-56, 287-94, 314-24. Neither Plaintiff nor her attorney mentioned diabetes at her hearing. *See* Tr. 29-55. On reconsideration, Plaintiff denied any new conditions as of October 2016, after Dr. Karnes-Amzibel noted her diabetes diagnosis. *See* Tr. 85, 99. The State agency consultants' reports show that diabetes was not listed among Plaintiff's allegations of impairments, Tr. 84-85, 98-99, and they noted that her diabetes was "non-severe," Tr. 90, 104. Moreover, Plaintiff does not allege work-related limitations caused by diabetes, and her treating physicians' medical source statements do not discuss diabetes or opine work-related limitations caused by diabetes. *See* Tr. 1125-38.

Plaintiff also challenges the ALJ's RFC assessment for failing to include a limitation addressing the limited use of her hands. Pl.'s Mot. 10. For support, Plaintiff cites generally to her medical treatment records and specifically to a September 2012 treatment record that noted Plaintiff's subjective complaint of "hand pain and weakness." *Id.* at 8 (quoting Tr. 349). At that visit, Dr. Kamsheh assessed Plaintiff with "[h]and weakness" and concluded that "[he] was not able to see anything wrong with the patient today." Tr. 351-52. Plaintiff also cites to the consultative examiner's report and Dr. Karnes-Amzibel's medical source statement. Pl.'s Mot. 10 (citing Tr. 771-73, 1128-32). The ALJ considered these medical records and the opinion evidence in his decision. *See* Tr. 19-20. The Court is not permitted to reweigh the evidence.

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal

*Tamara D. v. Saul*
Civil No. DLB-19-2543
July 16, 2020
Page 4

standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the record, and given the evidence outlined above, I find that the ALJ's step-two analysis was supported by substantial evidence and that the ALJ applied the correct legal standards.

<u>The ALJ properly considered the opinions of Plaintiff's treating physicians.</u>

Plaintiff next argues that the ALJ should have given more weight to the opinions of her treating physicians. Pl.'s Mot. 10-12. She first argues that the ALJ's explanation for giving Dr. Karnes-Amzibel's medical source statements no weight "amount[ed] to nothing more than a few boilerplate sentences and is inaccurate on its face." *Id*. at 11. However, the ALJ summarized the limitations opined by Dr. Karnes-Amzibel's and explained his assignment of weight:

> In August 2018, the claimant's treating source, Patricia Karnes-Amzibel, DO, completed a Fibromyalgia Medical Source Statement. Dr. Karnes-Amzibel opined the claimant can sit less than two hours and stand/walk less than two hours but no more than 15 minutes at one time for each in an eight-hour workday. Dr. Karnes-Amzibel opined the claimant needs a job that permits shifting at will and that she must walk around every 15 minutes for five minutes at a time. She opined the claimant needs to take unscheduled breaks every 15 minutes for 15 minutes in duration. She opined the claimant can rarely lift less than 10 pounds, rarely twist, stoop, crouch, climb ladders and stairs, look down, turn head left or right, and look up, and never hold head in static position. She opined the claimant can use her hands, fingers, and arms only 10 percent of the workday. Dr. Karnes-Amzibel opined the claimant would be off task 25 percent of the workday due to symptoms interfering with attention and concentration and is incapable of even low stress work. Dr. Karnes-Amzibel opined the claimant would be absent more than four days per month. In September 2018, Dr. Karnes-Amzibel completed a Chronic Fatigue Syndrome Medical Source Statement and opined the same limitations. I give no weight to Dr. Karnes-Amzibel's opinion because her longitudinal treatment records do not support the opinion. Exams by Dr. Karnes-Amzibel frequently show normal neck, normal musculoskeletal findings, normal motor function, normal gait, no problems with ambulation, and cognitive functioning that is not decreased. Her exams showed normal speech, normal level of consciousness, no disorientation, and no impairment of thought content. There are only intermittent findings of non-specific trigger points and myalgia but full range of motion and of mild cognitive impairment.

Tr. 19-20 (internal citations removed).

*Tamara D. v. Saul*
Civil No. DLB-19-2543
July 16, 2020
Page 5

  Under 20 C.F.R. § 404.1527(c),[2] an ALJ will give "controlling weight" to "a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s)" if he find that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." The regulations require that an ALJ "give good reasons . . . for the weight [he] give[s] [a claimant's] treating source's medical opinion." *Id.* An ALJ will consider the length and nature of the treatment relationship. *Id.* 404.1527(c)(2)(i)-(ii). An ALJ will also consider whether the opinion is supported, "particularly [by] medical signs and laboratory findings"; whether the opinion is consistent with the record as a whole; whether the opinion is "related to his or her area of specialty"; and any other relevant factors. *Id.* 404.1527(c)(3)-(6).

  As the Fourth Circuit has explained, "if a physician's opinion is not supported by the clinical evidence or if it [was] inconsistent with other substantial evidence, it should be accorded significantly less weight." C*raig*, 76 F.3d at 590. An ALJ's determination "as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 Fed. App'x 264, 267 (4th Cir. 2015) (citations omitted).

  Here, the ALJ explained that there was evidence in the record, including Dr. Karnes-Amzibel's treatment records, that contradicted her opinion that Plaintiff was significantly limited by her impairments. Tr. 17. Plaintiff argues that the ALJ's determination is inaccurate and asserts that "Dr. Karnes-Amzibel's treatment notes are replete with complaints of numbness, tingling, joint pain, weakness, memory issues, fatigue, low energy level, and little-to-no relief from medications." Pl.'s Mot. 11. The ALJ discussed Dr. Karnes-Amzibel's treatment records and explained his reasons for finding that they did not support Plaintiff's allegations of disabling impairments. *See* Tr. 15-16, 18-19. The ALJ also discussed the opinions of the State agency consultants who reviewed Plaintiff's medical records. Tr. 20. He gave little weight to the consultant opinion at the initial level that Plaintiff's physical impairments were not severe because he found that the evidence indicated Plaintiff's impairments were more significant than the consultant determined. The ALJ gave great weight to the consultant opinion on reconsideration that Plaintiff could perform medium work because he found that the opinion was consistent with the objective record evidence. *Id.* Plaintiff's argument, at its heart, is a request that the Court reweigh and interpret the evidence differently, which the Court cannot do. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Craig*, 76 F.3d at 589.

  Plaintiff similarly argues that the ALJ erroneously evaluated Dr. Brenda Scribner, M.D.'s opinion that she had extreme limitations in mental functioning. Pl.'s Mot. 12. The ALJ gave Dr. Scibner's opinion no weight because it was "inconsistent with her previous evaluation." Tr. 20.

---

[2] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017. It was replaced by § 404.1520c for claims filed on or after March 27, 2017. Plaintiff's claim was filed in 2015.

*Tamara D. v. Saul*
Civil No. DLB-19-2543
July 16, 2020
Page 6

The ALJ noted that Dr. Scribner had previously "estimated the claimant's intelligence to be above average" with "no errors related to attention/concentration," and that there was "evidence of noncompliance with treatment."[3]  *Id.* (citing Tr. 345-46, 901). Plaintiff argues that the ALJ "'inappropriately substituted a subjective decision for that of the overwhelming medical evidence.'"  Pl.'s Mot. 12 (quoting *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017)). However, the ALJ supported his assignment of weight to the opinion evidence by citing to the medical evidence. The ALJ also gave great weight to the State agency psychological consultants' opinions "because they [were] consistent with the record as a whole."  Tr. 21; *see* Tr. 94, 108 (opining that Plaintiff "should be mentally able to sustain concentration and persist at [a] range of occupational tasks . . . for at least two hours at a time," that "[t]here may be occasions during which [she] experiences some decrease in concentration, but she can attend to and complete [a] range of routine tasks as needed," and that "[s]he is mentally able to understand and follow a schedule, although persistence and pace may sometimes fluctuate."). Plaintiff has not shown that the ALJ's discussions of the medical opinions or the record were erroneous, and the Court will not disturb the ALJ's assignments of weight.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 11, is DENIED, and Defendant's Motion for Summary Judgment, ECF No. 12, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

Sincerely yours,

/s/

Deborah L. Boardman
United States Magistrate Judge

---

[3] Plaintiff asserts that it is "unknown which reports mention [Plaintiff] being noncompliant with treatment." Pl.'s Mot. 12. On this point, the ALJ specifically cited to Exhibit 13F at page 21. Tr. 20; *see* Tr. 901 (October 2017 For All Seasons progress record noting that "[t]he patient has been relatively noncompliant with any medication so far.").